# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

In re:

DREAM BIG RESTAURANTS, LLC,

Debtor.
_____/

Case No. 19-05090
Chapter 11

# DEBTOR'S [FIRST DAY] MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

The above-captioned debtor (the "Debtor"), by its proposed counsel, Schafer and Weiner, PLLC and proposed local counsel, Skinner Law Firm, LLC, in support of its [*First Day*] *Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection* (the "Motion") states:

## GENERAL ALLEGATIONS

1. On September 27, 2019, (the "Petition Date") the Debtor filed its Voluntary Petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[1].

2. The Debtor is currently operating as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Code. Phillip K. Wilkins, Jr. ("Mr. Wilkins") is the responsible person for the debtor-in-possession.

---

[1] Unless otherwise stated, all section references herein are references to sections of the Bankruptcy Code.

{00817427.1}

3. No official committee of unsecured creditors has been appointed in this case.

4. Debtor files this Motion pursuant to sections 363 and 361 of the Bankruptcy Code; and Fed. R. Bankr. P. 4001(b).

5. This Court has jurisdiction over the matters relating to this Motion pursuant to 28 U.S.C. § 1334(a).

6. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(M).

### BACKGROUND AND HISTORY

7. Mr. Wilkins is an experienced McDonald's franchisee. Since 1997, Mr. Wilkins has owned and operated, through various entities, McDonald's franchises in Ohio, Kentucky, Florida, and South Carolina. *See Declaration of Phillip K. Wilkins, Jr. in Support of Debtor's Chapter 11 Petition and First Day Pleadings* (the "Wilkins Declaration"), at ¶¶ 7-12, which is filed substantially contemporaneously with this Motion and in support hereof.

8. In 2016, the Debtor was formed and acquired eight (8) McDonalds franchises in Greenville and Greer, South Carolina. Id. at ¶ 12.

9. The Debtor continues to operate these eight (8) franchise locations. Id. at ¶ 13.

10. The majority of the Debtor's value arises from its ongoing operations and its ability to continue servicing its customers and operating its eight (8)

franchises. Without authority to use cash collateral: (i) the Debtor will suffer irreparable harm; (ii) it will be unable to continue to provide food to its customers; and (iii) its vendors and employees will abandon it because the Debtor will not be able to pay for their services. *See* Wilkins Declaration, at ¶ 33-34.

11. On the Petition Date, the Debtor, without admission, believes its cash collateral (the "Cash Collateral") consists of the following:

    a. Cash of approximately $183,270;

    b. Unpaid credit card receivables of approximately $35,000;

    c. Inventory having a book value of approximately $108,724 as of August 31, 2019[2].

Id. at ¶ 29.

## NATURE OF DEBT

12. Upon information and belief, TD Bank, N.A. ("TD") will assert a first priority secured claim in the principal amount of $7,073,889.01 as of August 12, 2019. TD may assert that its claim is secured by substantially all of the Debtor's assets including its Cash Collateral.

13. Upon information and belief, TD is significantly undersecured because McDonald's aggregate internal valuation of the Debtor's eight (8) franchises on a going concern basis is $4,733,526 as of May 2019. *See* **Exhibit B**.

---

[2] The Debtor updates its inventory figures at each month's end.

{00817427.1}  3

14. A uniform commercial code report from the State of South Carolina identified five (5) additional secured creditors junior to TD Bank. *See* **Exhibit C**. None of these five secured creditors are identified in the financing statements as the secured party by name. Id. Each is only identified by their agent. Id. As a result, based on the best information available to the Debtor, the Debtor determined the following:

15. Upon information and belief, On Deck Capital, Inc. ("On Deck"), a merchant cash advance company ("MCA"), will assert a second priority secured claim in the approximate amount of $174,507. On Deck may assert that its claim is secured by substantially all of the Debtor's assets including its Cash Collateral.

16. Upon information and belief, QuickSilver Capital, LLC ("Quicksilver"), another MCA, will assert a third priority secured position in substantially all of the Debtor's assets in the approximate amount of $126,600.

17. Upon information and belief, Celtic Bank Corporation ("Celtic") provided the Debtor with a line of credit, which is serviced by Bluevine Capital, Inc. ("Bluevine"), and will assert a fourth priority secured position in substantially all of the Debtor's assets in the approximate amount of $61,466 as of September 18, 2019.

18. Upon information and belief, World Global Capital, LLC d/b/a Mass Capital Funding ("Mass Capital"), another MCA, will assert a fifth priority secured

position in substantially all of the Debtor's assets in the approximate amount of $360,425.

19. The State of South Carolina, Department of Revenue (the "State") filed four notices of tax lien on February 21, 2019, March 14, 2019, April 11, 2019, and May 21, 2019 (the "State Tax Liens"). Upon information and belief, the State will assert State Tax Liens having a sixth priority position for unpaid sale and use tax of $338,801.49 in the aggregate.

20. Upon information and belief, Samson Funding ("Samson"), another MCA, will assert a seventh priority secured position in substantially all of the Debtor's assets in the approximate amount of $173,150.

21. Additionally, upon information and belief, PIRS Capital, LLC ("PIRS")[3], another MCA, may assert a secured interest in substantially all of the Debtor's assets in the approximate amount of $205,981. However, the Debtor does not believe that PIRS filed a financing statement, and, as such, is an unperfected secured creditor.[4]

---

[3] PIRS, Samson, Mass Capital, Bluevine, Celtic, Quicksilver, and On Deck are collectively referred to as the "MCA Creditors".

[4] An unperfected secured creditor is subject to the trustee's strong-arm power of section 544 and, as a result, does not have an interest in collateral and is not entitled to adequate protection. *See, e.g.,* In re Shree Meldikrupa, Inc., 2016 Bankr. LEXIS 159 (Bankr. S.D. Ga. Jan. 15, 2016) (denying adequate protection to unperfected secured creditor for cash collateral purposes); G&B Aircraft Mgmt. v. Smoot (In re Utah Aircraft Alliance), 342 B.R. 327, 338 (BAP 10th Cir. 2006)

22. Upon information and belief, no other creditors have or will assert an interest in Debtor's Cash Collateral.

23. Nothing in this Motion may be construed as an admission with respect to liability for any indebtedness, nor should anything within this Motion be construed as an admission with respect to the extent, status, validity and/or enforceability of any lien against any of the Debtor's assets.

### REQUEST FOR USE OF CASH COLLATERAL

24. The Debtor requires the use of Cash Collateral to make such payments as are necessary for the continuation of its business as shown in the budget attached as **Exhibit D** (the "Budget"). The projected revenue and expenses in the Budget are based upon Debtor's historical financial and operational data.

25. The Budget projects the Debtor's anticipated revenue and expenses, reflecting the assumption and rejection of certain contracts during the Budget's duration, and demonstrates the amount of funds the Debtor must expend on its operations.

26. The Debtor needs to spend $1,050,488 (assuming one month of Cash Collateral usage per the Budget) before the date of the final hearing or the date this Order becomes a final order in the absence of a timely objection, in order to avoid immediate and irreparable harm. The Debtor seeks authority to use Cash

---

("failure [of the creditor] to perfect its security interest relieves the Trustee from having to show adequate protection of a secured interest").

Collateral limited to the amount set forth above prior to the entry of a final order authorizing the Debtor to use Cash Collateral or the time this Order becomes a final order, as the case may be, unless ordered otherwise. Pending entry of a final order, the Debtor seeks authority to use Cash Collateral in accordance with the line item amounts set forth in the Budget, with a ten percent (10%) variance in line item.

27. Without the ability to make the payments as set forth in the Budget, the Debtor would be unable continue operations. A substantial portion of the Debtor's value arises from the continuance of ongoing operations.

## BASIS FOR RELIEF

28. Section 363(c) & (e) permits a debtor to use cash collateral after notice and hearing, if the Court finds that parties with an interest in the cash collateral are adequately protected.

29. What constitutes adequate protection is decided on a case-by-case basis. In re Snowshow Co., Inc., 789 F.2d 1085, 1088 (4th Cir. 1986) ("[W]e conclude that a judicial determination of … adequate protection is a question of fact rooted in measurements of value and the credibility of witnesses."). The purpose of the requirement is to protect a secured creditor from diminution in value of its interest in the particular collateral during the period of use. See In re Swedeland Dev. Group,

Inc., 16 F.3d 552, 554 (3d Cir. 1994). *See also* <u>Suntrust Bank v. Den-Mark Const., Inc.</u>, 406 B.R. 683, 702 (E.D. N.C. 2009) ("Adequate protection is designed to preserve the pre-petition position of the existing lender.").

30. Under § 361, "[w]hen adequate protection is required under § . . . 363 . . . such adequate protection may be provided by . . . (2) providing to such entity an . . . replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property[.]"

## <u>ADEQUATE PROTECTION</u>

31. As adequate protection under sections 363 and 361 of the Bankruptcy Code for any security interests that the TD or the MCA Creditors may assert, Debtor to the extent that the Debtor uses such Cash Collateral and does not replace it, offers replacement liens to the same extent, validity and priority that existed as of the Petition Date in all types and descriptions of collateral that were properly secured and perfected under the applicable, valid and enforceable pre-petition loan documents, which are created, acquired, or arise after the Petition Date.

32. Moreover, as additional adequate protection, the Debtor will make monthly payments of $1,000.00 per month to TD. This amount is calculated at the non-default interest payment due on the Cash Collateral (3.55363% as of September 25, 2019) and rounded up to the nearest thousand.

33. On the basis of the adequate protection submitted above, the Debtor submits that it should be granted authority to use the Cash Collateral.

34. In addition to the adequate protection proposed above, Debtor's use of Cash Collateral as provided for in the Budget service as its own form of adequate protection to Debtor's secured creditors by allowing the Debtor to preserve the value of the estate assets, prevent avoidable diminution in the value of the estate, and enhance the likelihood of increasing or preserving the Debtor's overall going concern value. *Cf.* In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D. N.Y. 1992).

35. As part of its request to use Cash Collateral, the Debtor is requesting that this Court allow it to escrow, on a monthly basis, $15,000.00 into the client trust account of its proposed general bankruptcy counsel. The escrowed funds will be used to pay the professional fees incurred by such legal counsel in connection with this bankruptcy proceeding to the extent the fees are allowed by this Court (the "Professional Fees").[5]

36. The Debtor contends that without authority to use Cash Collateral, the Debtor's operations would be severely impacted, which would have a detrimental effect on the estate and all of its creditors.

---

[5] The Debtor has contemporaneously filed an *Application to Employ Schafer and Weiner, PLLC as General Bankruptcy Counsel for the Debtor and Debtor-in-Possession*.

37. The entry of an order authorizing Debtor's use of its Cash Collateral will minimize disruption of the Debtor's business and will increase the possibility of a successful rehabilitation, and is, therefore, in the best interests of the estate and its creditors.

38. At this time, the Debtor is only seeking authority to to use the Cash Collateral on an interim basis to pay its necessary operating expenses (as outlined in the Budget) until the Court holds a final hearing on the Debtor's use of Cash Collateral. To the extent that no parties object to the order authorizing Debtor's use of Cash Collateral after service of the order, the interim order will become a final order authorizing the use of Debtor's Cash Collateral during this case.

### REQUEST FOR A FINAL HEARING

39. Pursuant to Fed. R. Bankr. P. 4001(b)(2), the Debtor requests that this Court set a date for the final hearing that is as soon as practicable and fix the date prior to the final hearing for parties to file objections to this Motion.

### NOTICE

40. The Debtor has provided notice of this Motion in accordance with Fed. R. Bankr. P. 4001(a)(1) and (b)(3). The Debtor asserts that this is sufficient notice under the circumstances of this case and no further notice need be provided.

## NO PRIOR REQUEST

41. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

42. For the reasons set forth herein, it is necessary that the Debtor obtains an interim hearing on the Debtor's use of cash collateral and granting of adequate protection as soon as possible, but in no event later than the afternoon of Tuesday October 1, 2019.

**WHEREFORE**, the Debtor respectfully requests this Honorable Court to:

a. Enter the order substantially in the form attached hereto as **Exhibit A** authorizing the Debtor to use Cash Collateral and granting adequate protection on an interim basis; and

b. grant such other and further relief as is just and equitable to the Debtor.

Respectfully submitted:

SCHAFER AND WEINER, PLLC

/s/*John J. Stockdale, Jr.*
JOHN J. STOCKDALE, JR.
(Mich. P71561)
Proposed General Bankruptcy
Counsel for the Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
248) 540-3340
jstockdale@schaferandweiner.com

*and*

SKINNER LAW FIRM, LLC

/s/*Randy A. Skinner*
RANDY A. SKINNER (_____)
Proposed Local Bankruptcy Counsel for the Debtor
300 North Main Street, Suite 201
Greenville, SC 29601
(864) 232-2007
rskinner@skinnerlawfirm.com

Dated:  September 27, 2019

# Exhibit A

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

DREAM BIG RESTAURANTS, LLC,

      Debtor.

_____/

Case No. 19-_____
Chapter 11
Hon. Helen E. Burris

## INTERIM ORDER AUTHORIZING THE DEBTOR TO USE
## CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

Upon consideration of the Debtor's [*First Day*] *Motion for Entry of Interim and Final Order Authoring the Debtor to Use Cash Collateral and Granting Adequate Protection* (the "Motion");[6] and upon consideration of the *Declaration of Phillip K. Wilkins, Jr. in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "Wilkins Declaration"); and the Court having jurisdiction pursuant to sections 157 and 1334 of title 28 of the United States Code to consider the Motion and the relief requested therein; and venue being proper in this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code; and this matter being a core proceeding within the meaning of section 157 of title 28 of the United States Code; and the Court having determined that the relief sought in the Motion is in the best interest of the Debtor, its creditors, and all parties-in-interest;

---

[6] Capitalized terms not defined in this Order have the meanings ascribed in the Motion.

and the Court having heard the sufficient evidence and statements of counsel regarding the Motion and having determined that the legal and factual bases set forth in the Motion and attested to in the Wilkins Declaration establish just cause for the relief granted herein, therefore;

**THE COURT HEREBY FINDS:**

A. On September 27, 2019, (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued in possession of its assets and has continued to operate its business as a debtor-in-possession pursuant to sections 1107(A) and 1108 of the Bankruptcy Code, and no Official Committee of Unsecured Creditors having been formed.

B. The Debtor requires the use of the Cash Collateral for the maintenance and preservation of its assets, and for the operation of its business and the payment of business expenses in the ordinary course.

C. The relief provided herein is necessary, essential and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets, and is otherwise necessary to avoid immediate and irreparable harm to the Debtor and its estate pending a final hearing on the Motion.

D. The Debtor provided notice of the initial hearing on the Motion by serving notice in accordance with Fed. R. Bankr. P. 4001(a)(1) and (b)(3). The

notice provided is appropriate, adequate and proper under the circumstances of this case in accordance with Fed. R. Bankr. P. 4001(b).

E.  All objections to the entry; of this order have been either resolved, withdrawn or overruled.

In light of the foregoing, **IT IS HEREBY ORDERED** that:

1. The Motion is Granted.

2. All capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

3. The Debtor is authorized to use Cash Collateral and grant adequate protection in accordance with the Budget and terms of the Motion, and such authority continues until further order of the Court.

4. The amount of Cash Collateral necessary for the Debtor to use to avoid immediate and irreparable harm before the date of the final hearing or the date this Order becomes a final order, in the absence of a timely objection and final hearing, is $1,050,488 (assuming one month of Cash Collateral usage per the Budget) and the Debtor's authorized use of Cash Collateral is limited to that amount prior to the entry of a final order authorizing the Debtor to use Cash Collateral or the time this Order becomes a final order, as the case may be, unless ordered otherwise. Pending entry of a final order, the Debtor may use Cash

Collateral in accordance with the line item amounts set forth in the Budget, with a ten percent (10%) variance in line item.

5. Within seven (7) days before the expiration of the Budget, Debtor shall file a replacement Budget with the Court, which shall become the Budget.

6. As adequate protection under section 363 and 361 of the Bankruptcy Code for any security interest that TD and any other secured creditors, including the State and the MCA Creditors, may assert in the Debtor's Cash Collateral, to the extent that the Debtor uses such Cash Collateral and does not replace it, are hereby granted replacement liens to the same extent, validity and priority that existed as of the Petition Date in all types and descriptions of collateral that were properly secured and perfected under the applicable, valid and enforceable pre-petition loan documents, which are created, acquired, or arise after the Petition Date.

7. As additional adequate protection, the Debtor shall make monthly payments to the TD in the amount of $1,000.00 beginning on October 6, 2019.

8. The Debtor shall, within twenty-four (24) hours following the entry of this Order, serve copies of this Order and the Debtor's motion for entry of this Order with all attachments on the 20 largest unsecured creditors, all secured creditors, any committee formed in this case, the United States Trustee's Office, and all other parties who are required to be served under Fed. R. Bankr. P. 4001(b).

9. All parties seeking to object to this Order must file a written objection within fourteen (14) days after the entry of this Order, except that an official committee may file objections within fourteen (14) days after the official committee is served with the entered Order. If an objection is timely filed, the final hearing on this Order will be held before the Honorable Helen E. Burris, United States Bankruptcy Judge, in her courtroom located at 201 Magnolia Street, Spartanburg, South Carolina 29306, on _____ ___, 2019 at __:00 [a.m./p.m.]. If no timely objection is filed, then this Order will become a final order without a further hearing, and the Debtor will be authorized to spend Cash Collateral to pay for those expenses referenced in the Motion, as well as any other expenses necessary for operating the business in the ordinary course going forward.

10. The Debtor's authority to use Cash Collateral shall continue until otherwise ordered by this Court.

11. The Debtor is authorized to escrow Professional Fees, as more fully set forth in the Motion. The first escrow payment shall take place no later than November 3, 2019 and on the third day of each month thereafter.

12. This Order is effective immediately.